SPAETH *v.* GIBSON.

*(Circuit Court, S. D. New York. March 19, 1883.)*

PATENTS FOR INVENTIONS—IMPROVED SKATE—AMERICAN CLUB SKATE.

The operative locking mechanism is the lever, which operates as the ordinary toggle-joint does after the parts have passed centers and is automatically held in against the runner by the pressure of the clamps, and the hook-like action alone of one of the links would not keep the clamps closed or locked, but the efficient locking cause is the toggle-joint and lever, the use of which in defendant's device will be enjoined.

*Arthur v. Briesen,* for plaintiff.

*A. J. Todd* and *Benj. F. Thurston,* for defendant.

SHIPMAN, J.    This is a bill in equity to restrain an alleged infringement of reissued letters patent which were granted on February 18, 1879, to the plaintiff, as assignee of Charles T. Day, for an improved skate commonly known as "The American Club Skate." The original patent was issued to said Day, as inventor, on July 11, 1871.

The invention is described in the specification of the reissue as follows:

"This invention consists in the combination in a skate of movable clamps for grasping the sole, and longitudinally-sliding clamps for grasping the heel at the back part thereof, a stationary spur or abutment for the breast of the heel, and a hand-lever adapted to operate both sets of clamps; also, in the combination in a skate of the heel and toe clamps, and of a lever swinging on a pivot which is situated on one side of the center line of said clamps for the purpose of holding the clamps firmly in their closed position; and, further, in the combination, with movable clamps for grasping the sole, longitudinally-sliding clamps for grasping the heel at the back part thereof, and with a hand-lever adapted to operate both sets of clamps, of a regulating screw for adjusting the clamps to heels and soles of different sizes."

The reissue contains four claims, of which the first and fourth only are said to have been infringed. These claims are as follows:

"(1) The combination, in a skate, of movable clamps for grasping the soles, of longitudinally-sliding clamps for grasping the heel at the back part thereof, a stationary spur or abutment for the breast of the heel, and a hand-lever adapted to operate both sets of the clamps, substantially in the manner herein shown and described.    (4) The combination, with movable clamps for grasping the sole, longitudinally-sliding clamps for grasping the heel at the back part thereof, a stationary spur or abutment for the breast of the heel, and with a hand-lever adapted to operate both sets of clamps simultaneously, of a regulating screw for adjusting the two sets of clamps to soles and heels of different sizes, substantially as set forth."

The original patent contained a single claim, which was as follows:

"The eccentrically-pivoted lever, E, combined and arranged with the heel and toe clamps of a skate substantially as specified."

The lever of the claim is thus described in the original specification:

"As the pivot, Z, by which the lever is attached to the stem of the heel clamp, is eccentric in its position, and so arranged that when the lever is closed against the runner it will lie without the line of traction connecting the pivots of the toggle, D, and swivel, D', it follows that the lever will be automatically held in against the runner by the pressure of the clamps.    Therefore there is no danger of the lever being thrown outward and tripping the wearer."

It will thus be seen that the claim and the specification of the original patent required that the hand-lever, which operates both sets of clamps simultaneously, should be eccentrically pivoted. The history of the patent shows that the patentee was compelled to limit his inventions, in view of his previous patent of December 28, 1869, to the combination of heel and toe clamps with a lever thus pivoted. The lever of the reissue must be construed to be the eccentrically-pivoted lever of the original patent.

The advice which was relied upon as anticipating the Spaeth skate was the skate of Alpheus S. Hunter, patented June 22, 1869. The two skates are organized in a substantially different manner in this respect. In the Hunter skate, (making use of the language of Mr. Brevoort, one of the plaintiff's experts,) "two adjustments are absolutely essential, while in the skate shown in the Spaeth reissue one adjustment is all that is ever required, and the difference arises from the use in the Spaeth skate of *longitudinally-sliding* heel clamps and sole clamps, which are so drawn together by a lever as to permit one set of clamps to be arrested, while the other set of clamps is capable of further advancement."

The defendant's skate is described in the patent of Everett H. Barney of October 11, 1881. The point wherein it is claimed to differ from the Spaeth skate is that what is called by the plaintiff the lower toggle link is called by the defendant a flat hook, which he says is caused to hook over the pivot of the sole clamp, and his expert says: "By means of said hook only the clamps are then retained in a locked position without any aid from said lever, and the latter may then, without in the least affecting the positive locking of the clamps, be entirely disconnected from said hook and swing freely on said sole-clamp pivot." I am of opinion that the operative locking mechanism is the lever which operates as the ordinary toggle-joint does, after the parts have passed centers, and is "automatically held in against the runner by the pressure of the clamps." I do not think that the hook-like action alone of one of the links would keep the clamps closed or locked, but that the efficient locking cause is the toggle-joint and lever.

Let there be a decree for an injunction and an accounting.